[Crim. No. 7698. Second Dist., Div. Three. Nov. 29, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. GERALD
DURWAN BOOKOUT, Defendant and Appellant.

Nichols and Hodge and Christopher Hall for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—This is an appeal from the judgment and from the order denying the appellant's motion for a new trial in a prosecution for possession of marijuana in violation of section 11530 of the Health and Safety Code.[1]

The appellant Bookout and his codefendant Frederick John Nehmer were found guilty of the charge of possession of marijuana in a trial in which a jury was waived. The evidence pertinent to the questions raised on this appeal will be summarized.

Robert G. Dreese was a police officer for the city of Los Angeles attached to the narcotic detail. He testified that on the morning of October 6, 1960, Inspector Newland, a state

[1]In the notice of appeal it is stated that the appeal is also from the order denying the appellant's motion to dismiss the information. The attempted appeal from such order must be dismissed. (See Pen. Code, § 1237.) However, the contentions made by the appellant upon such motion will be discussed in this opinion in the course of the consideration of the appeal from the judgment.

narcotics officer, informed him that a person named "Freddy" was dealing in narcotics in the South Gate area and was driving "a very clean" 1947 four-door Buick automobile. Officer Dreese, accompanied by Sergeant Beckman, Sergeant Salagi and a federal agent, arrived in the vicinity of 3007 Clarendon Street in Huntington Park about 3 p. m. They were in a panel truck. About 4:15 p. m. the defendant Nehmer parked a 1947 four-door Buick automobile in front of the house at that address. Nehmer went up to the house and was admitted. After approximately one minute he returned to his car, opened the trunk with a key, removed a cardboard box and took the box into the house. After being in the house about one minute, he brought the box back to the vehicle, opened the rear door and placed the box on the rear seat of the car.

When Nehmer closed the door of the automobile and walked around to the driver's side, Officer Dreese left the truck, approached Nehmer, identified himself as a police officer, and asked him his name. He said, "Fred" or "Freddy Nehmer." The officer asked him how much "weed"[2] he had; Nehmer answered that he had none. The officer then said, "What do you mean none? I can see it from here." Nehmer then stated, "Okay, two kilos." The officer, standing outside the car, observed the box in the vehicle; in the box he saw "some wire, . . . a quart can of paint or some material and underneath this . . . what appeared to be a newspaper-wrapped brick. . . ." The witness testified that occasionally marijuana is packaged in brick form, sometimes in a form approximately the size of a loaf of bread and sometimes in a form "approximately 10 inches square and an average of one and a half to two inches thick wrapped in brown paper or newspaper"; the marijuana is usually compressed into kilo bricks. What he observed in the box appeared to be a "brick of marijuana."

When the witness heard Nehmer say he had "two kilos," he hollered to Sergeant Beckman, who was then approaching the porch of the house, "Duke, it's weed." Nehmer was arrested and the newspaper-wrapped object was taken from the automobile. It was stipulated that that object was marijuana.

The defendant Nehmer testified on the issue of whether there was probable cause for his arrest. He said that he got

[2]Officer Dreese, who had been investigating narcotic cases for about 8 years, gave testimony at the trial to the effect that "weed" is a term for marijuana commonly used by those familiar with the traffic in that narcotic.

into his car, which was parked at the curb, and inserted the ignition key and then he observed Sergeant Dreese running toward him with his gun drawn. The officer pulled the door open, told him to get out of the car, and said that he was under arrest. Thereafter, Sergeant Dreese took him around to the other side of the car; the officer looked into the box. He then opened the door and took the box out.

Sergeant D. W. Beckman testified as a witness for the People. He was a police officer for the City of Los Angeles and was assigned to the narcotics division. As he approached the house, Sergeant Dreese shouted to him, "Duke, it's weed." He understood "weed" to mean marijuana. He continued to approach the house. The screen door was closed but the wooden front door was open and the appellant Bookout was standing in the doorway. The officer was then on the private sidewalk leading up to the front door. Bookout turned and walked out of view. Then someone slammed the door. The officer ran to the door, forced it open, and entered the house.[3] Officer Salagi followed him into the house.

Officer James A. Salagi testified that in the closet in the bedroom of the appellant Bookout's house he found a brown paper sack which contained a substance resembling marijuana. It was stipulated that the substance was marijuana.

The police officers acted without a warrant for the arrest of either Nehmer or the appellant. They had no search warrant with respect to the premises of the appellant Bookout. The appellant unsuccessfully attempted to prevent the introduction in evidence as against him of the marijuana seized in his house on the ground that such evidence was obtained by means of unlawful search and seizure. Such contention presents the principal problem on this appeal.

 "Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case. [Citations.] Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] Probable cause has also been defined as

---

[3]The witness testified: "When he started to slam the door, I ran towards the door and he slammed the door practically in my face."

having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. [Citations.] It is not limited to evidence that would be admissible at the trial on the issue of guilt. [Citation.]'' (*People* v. *Ingle*, 53 Cal.2d 407, at p. 412 [348 P.2d 577].)

 The observation that Officer Dreese made of the contents of the cardboard box while looking through the window of the parked car did not constitute a search because to see that which is in plain sight is not to engage in a search. (*People* v. *Hurst*, 183 Cal.App.2d 379, 386 [6 Cal.Rptr. 483]; *People* v. *Murphy*, 173 Cal.App.2d 367, 377 [343 P.2d 273].) He observed an object therein which appeared to be of a size and wrapped in a manner sometimes used in the packaging of marijuana. The defendant Nehmer admitted in substance that the package contained a quantity of marijuana. ''The law looks only at the facts and circumstances presented to the officer at the time he is required to act [citations] though it does examine all of these facts in determining probable cause.'' (*People* v. *Ingle, supra,* 53 Cal.2d 407, at p. 414.) The circumstances clearly justified a reasonable belief that Nehmer was engaged in the commission of a felony. Hence his arrest was lawfully made. The removal of the package from the vehicle incident to the arrest was reasonable and proper.

Sergeant Beckman was on his way to the front door of the appellant's house when Officer Dreese shouted to him, ''Duke, it's weed.'' The fact that Sergeant Beckman was on the appellant's land outside his house did not affect the lawfulness of what thereafter occurred. (See *People* v. *Hurst, supra,* 183 Cal.App.2d 379, 386.) In any event, in view of his information and what he had observed, he was justified in seeking to interview the occupant of the house. In *People* v. *Michael,* 45 Cal.2d 751, at page 754 [290 P.2d 852], it was said that ''it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes.'' Under the circumstances of which he was then aware, it was reasonable for Sergeant Beckman to understand the words shouted by his fellow officer to mean that Nehmer was in possession of marijuana and for him to infer that probably it had either been obtained inside the house or that it was a portion remaining after a delivery had been made to the house. Since Sergeant Beckman as he approached the front door heard Officer Dreese call out, ''Duke, it's weed,'' he no doubt assumed that Bookout, standing in the doorway, heard the same thing and knew that Beckman was

intending to enter the house in search of marijuana. In that situation, he was warranted in assuming that the slamming of the door was not merely an act of a neutral nature but was a furtive act undertaken to thwart any further ascertainment of facts relating to the commission of a crime. The whole situation thus presented to the officer was enough to arouse in his mind a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in the belief that the appellant was in the possession of marijuana or had just transferred marijuana to Nehmer. This was reasonable cause for the arrest of the appellant; the arrest was lawful. Since the arrest was lawful the search of the house which was incident thereto was legal. (See *People* v. *Lawton,* 186 Cal.App.2d 834, 836 [9 Cal. Rptr. 122].)

 The appellant asserts that the entry into his house was improper because there was not compliance with section 844 of the Penal Code.[4] It is true that Sergeant Beckman broke open the door without "having demanded admittance and explained the purpose for which admittance" was desired.

 But as said in *People* v. *Shelton,* 151 Cal.App.2d 587 [311 P.2d 895], at page 588: "The cases hold that where compliance with this provision would probably frustrate the arrest or permit the destruction of incriminating evidence compliance is not required. (*People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6]; *People* v. *King,* 140 Cal.App.2d 1 [294 P.2d 972]; *People* v. *Sayles,* 140 Cal.App.2d 657 [295 P.2d 579].)" (See also *People* v. *Hammond,* 54 Cal.2d 846, 854 [357 P.2d 289].) "Where there is reasonable cause to make an arrest, and the facts known to the arresting officer before his entry are not inconsistent with a good faith belief on his part that compliance with the formal requirements of that section is excused, a failure to comply therewith does not invalidate the search and seizure made as an incident to the ensuing arrest." (*People* v. *Hammond, supra,* 54 Cal.2d 846, at 854-855; *People* v. *Maddox,* 46 Cal.2d 301, 306-307 [294 P.2d 6].)

 Under the circumstances of the present case, there is no sound basis for the appellant's contention.[5]

---

[4]Section 844 of the Penal Code is as follows: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

[5]The testimony at the preliminary hearing with respect to what occurred when Nehmer and the appellant Bookout were arrested was sub-

464

■ A further contention is that the trial court erred in denying the appellant's motion for a new trial. In support of that motion there was filed a declaration of one of the appellant's attorneys in which it was stated that in a proceeding with respect to the custody of a child of the appellant's wife and her former husband, Sergeant Beckman testified, at a time subsequent to the trial, as follows: "Sergeant Drees[e] said, 'Duke, it is weed.' I did not know then whether he found the weed in the box or in the car or on Mr. Neimer [Nehmer]. . . ." However, the witness added: ". . . but I knew there was weed found where Mr. Neimer [Nehmer] was." The witness also testified that when he heard the statement of Sergeant Dreese, he thought that there was marijuana in the box because his attention was on the box. He further testified: "Sergeant Drees' [Dreese's] attention, as well as I can recall, was also focused on the box. We talked about it in the truck and when Sergeant Drees[e] broached [sic] Mr. Neimer [Nehmer] I was going to approach the house; this was a prearranged plan we had made." There is no merit in the appellant's contention. In the first place, the same inquiry could have been made of Sergeant Beckman at the trial. Moreover, when considered as a whole, such subsequent testimony of the officer does not detract from the basis for the determination, heretofore stated, that a prudent man in the position of Sergeant Beckman, knowing what he knew and seeing what he saw, would have had reasonable cause to believe and to conscientiously entertain a strong suspicion that the appellant Bookout was violating or had violated the law. (See *People* v. *Ingle, supra,* 53 Cal.2d 407, 414.)

■ It was stated by the court in *People* v. *Long,* 15 Cal. 2d 590 [103 P.2d 969], at pages 607-608, as follows: "It has been ruled that newly-discovered evidence which would tend merely to impeach a witness is not of itself sufficient ground for granting a new trial. [Citations.] ■ To warrant the granting of a new trial on the ground of newly-discovered evidence it must be such as to render a different verdict reasonably probable on a new trial. [Citations.]" ■ In the

stantially the same as that given at the trial, except that defendant Nehmer did not testify at the preliminary hearing. In the superior court a motion to set aside the information was made pursuant to section 995 of the Penal Code. In the argument of that motion, the lawfulness of the conduct of the officers was challenged as was the propriety of the denial by the magistrate of the motion to exclude witnesses, a subject hereafter discussed in this opinion. That motion was denied. A writ of prohibition was sought in the District Court of Appeal (see Pen. Code, § 999a); the petition was denied. (2d Civ. No. 25184.)

present case it is not reasonably probable that a result more favorable to the appellant would have been reached if a new trial had been granted. Under all the circumstances it cannot be said that the trial court abused its discretion. No error appears in the denial of the appellant's motion for a new trial. (See also *People* v. *Granillo,* 140 Cal.App. 707, 718-719 [36 P.2d 206].)

The appellant contends that at his preliminary examination the magistrate committed error in denying his motion for the exclusion of witnesses. The transcript of the preliminary examination discloses the following: "Mr. Hodge: —on behalf of the defendants Bookout [Mr. and Mrs. Bookout] we move that all witnesses to be called on behalf of the People be identified and they be excluded from the courtroom during the testimony of any particular witness on behalf of the People, and that they be separated during the time that they are waiting to be called to the witness stand. THE COURT: The motion will be denied." The witnesses were Officers Dreese, Beckman and Salagi.

There was no error in the denial of the motion. The reasonable conclusion to be drawn from the statement of the motion by the appellant's counsel was that it was not based upon section 868 of the Penal Code[6] but rather on section 867.[7] Of a contention similar to that here made, Mr. Justice Herndon said in the case of *People* v. *Guy,* 191 Cal.App.2d 714, at pages 717-718 [13 Cal.Rptr. 17]: "The defendant contends that it was reversible error for the magistrate not to have excluded the investigating officer and the mother from the preliminary hearing. He relies upon *People* v. *Elliot,* 54 Cal.2d 498 [6 Cal.Rptr. 753, 354 P.2d 225], and *People* v. *Prizant,* 186 Cal.App.2d 542 [9 Cal.Rptr. 282], to support his position. It is clear that the cited cases stand for the proposition that where a motion is made under section 868 of the Penal Code to exclude from the hearing room all persons

[6]Section 868, at the time of the preliminary hearing on October 21, 1960, was in part as follows: "The magistrate must also, upon the request of the defendant, exclude from the examination every person except his clerk, court reporter and bailiff, the prosecutor and his counsel, the Attorney General, the district attorney of the county, the defendant and his counsel, and the officer having the defendant in custody; . . ."

[7]Section 867 of the Penal Code is as follows: "While a witness is under examination, the magistrate may exclude all witnesses who have not been examined. He may also cause the witnesses to be kept separate, and to be prevented from conversing with each other until they are all examined."

except those expressly named in the code section, that the request is mandatory and if a person not so designated is permitted to remain it is reversible error. . . . The defendant's argument presupposes that the motion he made at the preliminary hearing was under section 868 for the exclusion of all persons not expressly authorized by that section. Examination of the record, however, reveals that the defendant did not indicate that the motion he made was based upon section 868, nor did he use the language of the section that '[t]he magistrate . . . exclude . . . *every person* . . .' except those enumerated. (Emphasis added.) Rather, the defendant asked 'that *any witnesses* be removed from the courtroom.' (Emphasis added.) Clearly, then, the motion was for the exclusion of 'witnesses who have not been examined' under section 867 of the Penal Code. The contrast between the two sections is clear. While section 868 is mandatory, section 867 'gives the magistrate discretion to exclude and/or separate witnesses.' (*People* v. *Elliot, supra,* at p. 504.) There was no abuse of discretion in the magistrate's failure to exclude the investigating officer because the defendant has not shown that he was prejudiced in any way by the officer's presence. (*People* v. *White,* 100 Cal.App.2d 836, 838 [224 P.2d 868]; *People* v. *Lariscy,* 14 Cal.2d 30, 32 [92 P.2d 638].)'' In the present case, no prejudice is apparent.

The attempted appeal from the order denying the appellant's motion to dismiss the information is dismissed. The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied December 15, 1961, and appellant's petition for a hearing by the Supreme Court was denied January 24, 1962.